Eva KALMAN, Plaintiff,

v.

CUNARD LINE, LIMITED, John Does 1–20; Mary Does 1–20; Doe Corporations 1–20; Doe Partnerships 1–20; Doe Associates 1–20; Doe Governmental Agencies and Other Entities 1–20, In Personam and the M/V Cunard Royal Viking Sun, a Bahamian Cruise Vessel, her engines, boilers, tackle, stores, freight, furnishings, equipment and appurtenances, In Rem, Defendants.

Civ. No. 95–00032 SPK.

United States District Court,
D. Hawai'i.

June 28, 1995.

Jay L. Friedheim, Honolulu, HI, for Plaintiff.

John R. Lacy and Lindalee K. Farm, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for Defendants.

## ORDER DENYING MOTIONS

SAMUEL P. KING, Senior District Judge.

### OVERVIEW

Defendant Cunard Line ("Cunard") moves to dismiss, asserting that a forum-selection clause on the back of a reservation form requires Plaintiff to bring this action in New York. Plaintiff Eva Kalman ("Kalman") opposes dismissal and cross-moves for summary judgment, asserting that the forum-selection clause is not enforceable against her. The matter was argued on June 27, 1995. John Lacy, Esq., appeared for Cunard; Jay Friedheim, Esq., for Kalman. Because of disputed factual issues, the court DENIES both motions.

### BACKGROUND

Sometime in November of 1994, Kalman booked a cruise from Australia to San Francisco on Cunard's ship, M/V Cunard Royal Viking Sun. The voyage began on December 2, 1994. During the voyage, Kalman's traveling companion Edith Reti ("Reti") allegedly injured herself (Reti filed a separate action against Cunard in CV 94–00979ACK). Kalman allegedly was "within the sphere of influence of this event," [Complaint at 4], and suffered unspecified emotional distress damages. Reti was hospitalized in Hawaii and Kalman stayed here with her. Allegedly, a Cunard doctor told Kalman and Reti that Cunard would pay medical bills or related travel expenses or both. In this action, Kalman apparently seeks reimbursement for these expenses, as well as damages for negligence, failure to warn, infliction of emotional distress, and tortious breach of contract.

### DISCUSSION

Cunard moves to dismiss for lack of venue, seeking to enforce a forum-selection

clause, which is printed on the back of Kalman's reservation form:

> Art. 19 .... It is agreed by and between the passenger and the Company that any and all disputes and matters whatsoever arising under, in connection with or incidental to this Passage Contract or the service thereunder provided by the Company shall be litigated (if at all) in and before any court located in the State of New York, USA to the exclusion of the courts of any other state or country....

The front of the reservation form states in capital letters:

> IMPORTANT: .... CRUISE TRANSPORTATION IS PROVIDED PURSUANT TO THE TERMS AND CONDITIONS OF THE OPERATORS PASSAGE CONTRACT, THE TERMS AND CONDITIONS OF WHICH ARE CONTAINED ON THE REVERSE OF THIS FORM.

For this issue, general maritime law controls (rather than the law of this forum, or of New York as indicated in Article 20 of the reservation form regarding governing law). In *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Supreme Court held that such clauses in maritime contracts are valid.[1] However, in *Corna v. American Hawaii Cruises, Inc.*, 794 F.Supp. 1005 (D.Haw.1992), Judge Ezra distinguished *Carnival Cruise Lines*. A two-part test applies: First, whether the passenger had notice of the clause, i.e., was the clause "reasonably communicated" to the passenger? Second, whether the clause itself is "reasonable" after "judicial scrutiny for fundamental fairness." *Carnival Cruise Lines*, 499 U.S. at 595, 111 S.Ct. at 1528; *Corna*, 794 F.Supp. at 1008.

In *Carnival Cruise Lines*, the Supreme Court addressed the second prong [2] and held that the Ninth Circuit erred in refusing to enforce a forum-selection clause nearly identical to the one at issue here. The Court emphasized that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness," 499 U.S. at 595, 111 S.Ct. at 1528, but enforced the clause because (1) there was no indication that the forum was set to discourage legitimate claims, (2) there was no evidence that the clause was procured by fraud or overreaching, and (3) the passengers had conceded that they had notice of the provision and "presumably retained the option of rejecting the contract with impunity." *Id.*

In *Corna*, Judge Ezra distinguished *Carnival Cruise Lines* and refused to enforce a forum-selection clause because the plaintiffs in *Corna* were stand-by passengers who received their tickets only two or three days before the cruise departure date. They would have forfeited several thousands of dollars if they rejected the contract. Thus, because the particular passengers did not "retain the option of rejecting the contract with impunity," Judge Ezra found the clause *not* to be reasonable.

■ The primary dispute here centers around whether Kalman had notice of the terms of the forum-selection clause. Kalman apparently never dealt directly with Cunard. Her dealings were with FBI Travel Agency, specifically with an agent named Rosie Chaskiel.[3] If Kalman did not have sufficient notice, then the first prong fails (and, consistent with *Corna*, the clause would be unreasonable because presumably Kalman would not have been able to "reject the contract with impunity"). Thus, if there is a true factual dispute regarding notice, it is inappropriate to enforce the clause at this point in the litigation.

Cunard argues that it sent a blank reservation form to FBI Travel on November 4, 1994—about a month before the cruise—

---

1. In 1992, Congress overruled *Carnival Cruise Lines* by amending 46 U.S.C.App. § 183c. 138 Cong.Rec. H11766-01, H11785 (Oct. 5, 1992). However, in 1993, Congress overruled itself and reinvigorated *Carnival Cruise Lines* by amending § 183c back to how it was before 1992. 140 Cong.Rec. S1847-02 (Feb. 24, 1994).

2. The first prong—notice—was not addressed in *Carnival Cruise Lines*. *See Carnival*, 499 U.S. at 590, 111 S.Ct. at 1525 ("Respondents essentially have conceded that they had notice of the forum-selection provision.").

3. Both parties assume that FBI Travel, through Rosie Chaskiel, is an agent of Kalman, rather than of Cunard.

along with other travel documents for Kalman and Reti. *See* Affidavit of Melanie Bernstein [Reservations Services and Operations Manager for Cunard] of May 4, 1995, at 2 ("Cunard sent Exhibits B, C, and D [blank reservation form] to FBI Travel on November 4, 1994.") and Affidavit of Sarina J. Bratton [Vice President and General Manager of Cunard] of June 15, 1995, at 2 ("The documentation clerk, as a matter of course and practice, staples a blank Reservation Form to each Invoice."). Cunard argues that notice to FBI Travel of the terms and conditions on the blank reservation form serves as notice to the passenger. *Hodes v. S.N.C. Achille Lauro ed Altri–Gestione,* 858 F.2d 905, 911–12 (3d Cir.1988) (passenger charged with notice of provision in ticket held by travel agent), *cert. dismissed,* 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149, *overruled on other grounds, Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Marek v. Marpan Two, Inc.,* 817 F.2d 242, 247 (3d Cir.) (friend), *cert. denied,* 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987); *Corna,* 794 F.Supp. at 1009–10 (husband of passenger). Cunard also argues that it has dealt with FBI Travel on previous occasions and, therefore, FBI must have known about the reservation form's provisions.[4]

Kalman disputes whether she had any type of constructive notice. The travel agent, Rosie Chaskiel, claims that she received by fax only the *front* of a filled-out reservation form on November 22, 1994. Chaskiel claims she never received the back of the form containing, *inter alia,* the forum-selection clause. Chaskiel avers[5] that she booked the cruise by phone on November 4, 1994 and received an invoice on November 16, 1994. She also avers that Kalman and Reti received their cruise tickets only two days prior to travel (and presumably were unable to cancel "with

impunity"). *See* Affidavit of Rosie Chaskiel, May 22, 1995 at ¶¶ 5, 6; Affidavit of Rosie Chaskiel, June 23, 1995.

Kalman also points out that this is, in part, an *in rem* action against the vessel M/V CUNARD ROYAL VIKING SUN, and argues that she must file the action in a district where the vessel is subject to seizure (although the vessel has not yet been seized). She argues that the forum-selection clause is invalid because, apparently, she would not be able to seize the vessel in New York.

Although the reasonableness of the terms and conditions of a cruise ship ticket is ultimately a question of law for the court, *Hodes,* 858 F.2d at 908, this court finds that there presently are disputes of material fact that preclude either (1) enforcement of the forum-selection clause or (2) a declaration that the clause is unenforceable. Foremost is the dispute over [whether] Kalman, or her "agent," had any notice of the terms of the forum-selection clause in the reservation form. If Cunard never communicated (actually or constructively) the back of the reservation form to Kalman, then it would be unreasonable to enforce the forum-selection clause against her.

Accordingly, Cunard's Motion to Dismiss is DENIED and Kalman's Motion for Summary Judgment is also DENIED.

IT IS SO ORDERED.

---

4. Cunard also argues that nowhere has Kalman herself disclaimed prior personal knowledge of the terms of the selection clause. Kalman, however, points out that Cunard has not met its initial burden to set forth evidence that Cunard gave personal notice to Kalman herself (not FBI Travel agency).

5. Kalman submitted two affidavits from Chaskiel. The first was sworn on May 22, 1995 in Victoria, Australia. The second was submitted on June 23, 1995, but was not sworn before a notary. Mr. Friedheim submits by affidavit that Chaskiel's husband is undergoing by-pass heart surgery and that notaries are difficult to find in Australia. He avers that Chaskiel will soon have the document notarized. The court notes that 28 U.S.C. § 1746 allows unsworn declarations if made under penalty of perjury of the law of the United States.